## Case No. 8,856.

### McKENZIE et al. v. COWING.

[4 Cranch, C. C. 479.] [1]

Circuit Court, District of Columbia. Nov. Term, 1834.

NE EXEAT—EMBEZZLEMENT — DEPOSIT IN BANK— INJUNCTION TO RESTRAIN PAYMENT.

If a clerk embezzle the goods of his employer, and convert the same into money, and deposit it in a bank to his own credit, injunction will not lie to restrain him from disposing of it, although he has no other property, and is about to quit the district; no debt being positively averred so as to justify a ne exeat.

The bill in this case was filed in Alexandria, and an injunction was granted by one of the judges, to restrain the bank of Potomac and the bank of the United States at Washington from paying to the defendant [William Cowing], and to restrain the defendant from receiving or transferring the money deposited therein by the defendant to his credit.

Mr. Semmes and Mr. Jones, for defendant, moved the court to dissolve the injunction for want of equity in the bill.

By consent, the motion was heard at Washington, and was fully argued by Mr. Semmes, Mr. Bradley, and Mr. Jones, for defendant, and by Mr. Coxe, for plaintiffs [McKenzie & Co.].

Mr. Semmes, for the defendant, cited 1 Bl. Comm. 152; Bradby, 147, 213; Vernon v. Vawdry, 2 Atk. 119; Cox v. Bateman, 2 Ves. Sr. 19; Bartlett v. Hodgson, 1 Term R. 42; 3 Ridg. App. 1; Moses v. McFerlan, 2 Burrows, 1008; Rhodes v. Cousins, 6 Rand. [Va.] 188; Wiggins v. Armstrong, 2 Johns. Ch. 144, 145; Id. 283; Chamberlayne v. Temple, 2 Rand. [Va.] 384; Millar v. Taylor, 4 Burrows, 2400; Oxford v. Richardson, 6 Ves. 695, 707; Anon., 1 Vern. 120; Id. 127, 276; Lord Chedworth v. Edwards, 8 Ves. 46; Hart v. Ten Eyck, 2 Johns. Ch. 108; Clifford v. Brooke, 13 Ves. 131; Webster v. Couch, 6 Rand. [Va.] 519; 1 Co. Litt. (Thomas' Ed.) 527.

Mr. Jones, on the same side, cited 1 Madd. Ch. Prac. 154; Eden, 211; Dick, 149; Deg v. Deg, 2 P. Wms. 414; Sowden v. Sowden, 1 Brown, Ch. 582, 1 Coxe, Ch. 165; Lechmere v. Earl of Carlisle, 3 P. Wms. 211; Perry v. Phelips, 4 Ves. 108, 17 Ves. 174; Pitt v. Jackson, 2 Brown, Ch. 51; Jaques' Case, 1 Johns. Ch. 65; Wallace v. Duffield, 2 Serg. & R. 521; Pollard v. Patterson, 3 Hen. & M. 67; Schmidt v. Dietricht, 1 Edw. Ch. 119; Rogers v. Vossburgh, 4 Johns. Ch. 84; Livingston v. Kane, 3 Johns. Ch. 224; Chichester v. Vass, 1 Munf. 98.

Mr. Bradley, same side, cited 1 Leach, 251, 699, 870; 2 Russ. 197, 201, 202; 2 Starkie, 833; Cox v. Paxton, 17 Ves. 330; Eden, 27; Coop. 276; Phillips v. Crammond [Case No. 11,092]; Murray v. Lylburn, 2 Johns. Ch. 441.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Coxe, contra, cited Lutterell v. Reynell, 1 Mod. 283.

CRANCH, Chief Judge (nem. con.). The facts stated in the bill, and which upon the motion to dissolve the injunction for want of equity, are to be taken as true, are, that from 1828 to 1834, the plaintiffs employed the defendant as their clerk, book-keeper, and salesman in the retail dry-goods business at a salary of about $350 a year, and that, during that time, he clandestinely and fraudulently, and in violation of the trust reposed in him, abstracted and appropriated to his own use, money and effects of the plaintiffs to an amount exceeding $9,000. That he has a large amount of money deposited to his credit with the Bank of the United States at Washington, which, to that extent, if so much he has, is the money of the plaintiffs; or has arisen from their property and money so abstracted by the defendant. That the plaintiffs have brought suit at law against him to recover the money and effects so clandestinely taken and appropriated to his own use. That the defendant is about to remove from the District of Columbia, and that he has no property except the money in bank and two boxes at William Gregory's, the contents of which are unknown. That the defendant will remove and secrete the money before the determination of the suit at law against him, unless restrained by the court, &c.; and that the plaintiffs want his answer and discovery in some material points necessary to the prosecution of the suit at law. This is not stated to be such an equitable debt, nor averred in so positive a manner, as to justify the court in granting a writ of ne exeat if it had been asked for; and it was not asked for, probably, because the counsel of the plaintiffs correctly supposed that if it could be considered as a simple debt, it was recoverable at law, and would be a case for legal bail. If it is not a case for a ne exeat, to detain the person of the defendant, upon which alone a court of equity can act, there seems to be as much reason for not detaining the property of the defendant upon which a court of equity cannot act, unless by means of an execution specifically authorized by statute.

The only question remaining is, whether this money is, according to the statement of facts in the bill, to be considered as the money of the plaintiffs. The bill avers that it is the money of the plaintiffs; or has arisen from their property or money so abstracted, &c. If the averment had been positive and absolute that it is the plaintiffs' money, there could be no doubt that it might be retained by injunction. The doubt arises from the alternative averment that it has arisen from the plaintiffs' property and money so clandestinely, fraudulently, and in violation of his trust, abstracted and appropriated to his own use. If the fact be, as

suggested by this averment, that this money is the proceeds of the plaintiffs' money abstracted by the defendant and appropriated to his own use, can the court consider it as specifically the money of the plaintiffs? The plaintiffs themselves did not so consider it or they would not have made the alternative averment; for if, in either case, it be the plaintiffs' money, it was sufficient to have so averred it to be. The question then occurs, can this court follow and specifically detain the money that has arisen from the abstracted money of the plaintiffs?

The strongest case which has been cited in favor of the plaintiffs, is that of Lord Chedworth, in 8 Ves. 46. In that case, however, the injunction was only to prevent a transfer of stock which had been purchased directly with the plaintiff's money by his agent, who had placed it in his own name instead of that of the plaintiff; and the injunction was only granted until the defendant should, by his answer, distinguish the property of his master which he had mingled with his own; and the lord chancellor says: "The case, though new, stands upon a principle that will maintain it only till he informs me what part of this property is not his master's." It is true that the injunction was at first extended to the money at the banker's as well as to the stock; but, a few days afterward the lord chancellor varied the order by confining the injunction to the stock. And in the case of Cox v. Paxton, subsequently reported in 17 Ves. 329, "Lord Eldon said he had consulted with Lord Ellenborough, and thought he had gone too far." This is stated in 1 Madd. Ch. Prac. 155, and in Eden, Inj. 211, although it does not appear in the case of Cox v. Paxton, as reported in 17 Ves. That case, however, does, in principle, overrule that of Lord Chedworth in 8 Ves. In the case of Cox v. Paxton, the plaintiff's clerk had embezzled his money by false entries in his accounts of receipts and payments, and laid it out in the purchase of policies of life insurance, which he had delivered to the defendants on account of a debt due by him to them, with notice that they were the produce of the plaintiff's property. This embezzlement was a felony within the 39 Geo. III. c. 85; but independently of that objection, the Lord Chancellor Eldon said: "You cannot denominate him" (the clerk) "a trustee, in any way; there was no trust to lay out this money upon policies of insurance, nor any obligation except to account. His application of the money in this way could never, even without this act of parliament, have given the plaintiffs a title to these policies of insurance. How, then, are they to be considered the plaintiff's property in the hands of the defendants?" "If this case is to be taken according to the representation of the bill, (as it must be upon this demurrer, but only for the purpose of the argument,) that the defendants, knowing that the plaintiff's

money was laid out in these policies, insist upon holding them, the morality of it is obvious; but that cannot be the foundation of a rule in equity." The demurrer was allowed. The case of Rhodes v. Cousins, cited by the defendant's counsel, from 6 Rand. [Va.] 188, states the doctrine very strongly, that a court of equity cannot control a debtor as to the disposition of his property, until final judgment or decree.

If, therefore, the money in the bank is not the specific money of the plaintiffs, and if the defendant cannot, according to the judgment of Lord Eldon, be denominated a trustee in any way, we do not see that we have any authority to deprive the defendant of the control of it. If the transaction amounts to a felony, there is no civil remedy. If it be not a felony, it can only be a tort, or a contract. express or implied. If a tort, the remedy is in damages; if it be a contract, the remedy is in debt, or assumpsit; if it be a debt, it is as much a debt at law as in equity; and the plaintiffs may have bail at law, if they can make out a proper case.

We think the injunction cannot be supported upon the face of the bill, and that it must, therefore, be dissolved. Injunction dissolved.